## GEORGE LATHAM v. THE STATE.

No. 2629.   Decided October 29, 1913.

**Local Option—Charge of Court—Agency—Sale.**

Where, upon trial of a violation of the local option law, the evidence precluded the idea that defendant agreed to sell whisky to the prosecuting witness, and showed that he got the whisky from another as an accommodation to the prosecuting witness as his agent, this issue should have been properly submitted to the jury, and a failure to do so was reversible error.

Appeal from the District Court of Shelby.   Tried below before the Hon. W. C. Buford.

Appeal from a conviction of a violation of the local option law; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*J. M. Sanders* and *Carter Walker,* for appellant.—On question of the court's charge: Pettus v. State, 58 Texas Crim. Rep., 546, 126 S. W. Rep., 868.

On question of the insufficiency of the evidence: Gaston v. State, 102 S. W. Rep., 116; Short v. State, 49 Texas Crim. Rep., 244; Thomas v. State, 66 Texas Crim. Rep., 472, 147 S. W. Rep., 578; Rigsby v. State, 64 Texas Crim. Rep., 504, 142 S. W. Rep., 901; Scott v. State, 153 S. W. Rep., 871.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law in Shelby County, and given one year in the penitentiary.

The prosecution relied upon the testimony of the witness Crockett. His testimony is to the effect and in substance that on a certain night he was drinking and, as he said, half drunk; that he went to a certain negro woman's house where a lot of men were congregated and wanted whisky. He first offered $1.50 with which to get the whisky. No reply was made to this. He finally said he would give two dollars, and asked appellant if he had some whisky or could get him some. Appellant told him he had no whisky, but he thought he "could rustle" him a quart. Appellant took the two dollars and left the house. After being absent a while he returned with the quart of whisky or alcohol. This witness says appellant said he would "rustle him" a quart but never said he would sell it to him. He says further that he had some indistinct recollection of something being said about the price of the whisky, but could not remember; that he did remember he said something; the only thing he could remember was that appellant gave him a quart of whisky for the two dollars he had given him; did not recollect whether appellant told him at the time he got the whisky from Alex Maxey and that was what he charged for it, though he might have said so. "I just can't recollect and remember. I paid him two dollars before he went for it." This is the substance of the State's case.

Jenkins testified he was at the negro woman's house on the occasion mentioned, and heard Crockett, the State's witness, ask appellant to sell him a bottle of whisky, and he heard appellant deny having any whisky, but told Crockett at the time he would get the whisky from Alex Maxey. Crockett first wanted to give $1.50, and appellant said he could not get it for $1.50, but thought he could get it for $2. He was gone quite a length of time and returned with the whisky. That during the conversation between Crockett and appellant they were talking about Alex Maxey; at least that was what he understood.

Cartwright testified he remembered the occasion mentioned in which appellant is charged with selling Crockett whisky at the negro woman Watts' house. He was there on the occasion and saw Alex Maxey and appellant. That this witness and Jack Wortell were together, and there were other people in the house. This witness, however, says he did not go in the house; he was just outside. Appellant and Alex Maxey were outside of the house; appellant came out there; Alex Maxey was already there. Witness says he was standing there at the corner of the fence; he did not know whether appellant and Alex Maxey saw him or not; that he heard appellant tell Alex Maxey that he wanted a bottle of whisky, and heard Alex Maxey say it was worth $2. The trade was then consummated, and appellant took the bottle of whisky and went in the house with it. It was at night, and he did not see what was

in the bottle, but from all the circumstances this witness makes it clear it was the same bottle that appellant got from Maxey and carried in the house to Crockett. He says he was down there "after a woman just like fellows will do some time after women." He says there was no woman out there where he was, but one was liable to come out there. "I had an appointment to meet one there. The woman was married and I don't want to tell about it. I was about fifteen steps from them I guess." While he was out there defendant came out and got the bottle of whisky. Afterwards he got with the witness Crockett and drank some of the whisky. He also testified that he had been out there something like twenty or thirty minutes and the woman had not yet come. He says "I reckon I got there ahead of time, but she did come. I know where Alex Maxey is; he left here going to the pen." It was agreed by counsel that Maxey, the party from whom appellant is said to have gotten the whisky, was convicted of selling intoxicating liquors in Shelby County and went to the penitentiary for a term of one year, and that he is now at the time of this trial in the penitentiary. It was further agreed that he was not in the penitentiary for this particular sale, but for the sale of other whisky.

The defendant testified himself that he was down at the negro woman's house when Crockett, the State's witness, came there and asked about whisky, and asked appellant if he had any, and was answered in the negative. He says Crockett got up and rattled some money, and Jack Wortell came and holloed hello and exchanged the usual greetings of the evening. He testified he was informed that Alex Maxey had whisky, and that it was for sale or could be obtained. This was communicated to Crockett, and further that Maxey would not take less than two dollars for his whisky. Witnesses seem to differ as to whether it was whisky or alcohol. He told Crockett that Maxey had whisky, and if he wanted to pay two dollars for it he could get it. He then gave appellant two dollars, and he went and got the whisky and brought it back and gave it to Crockett.

There are errors assigned on the charge as well as allegations that the evidence is not sufficient. The court, among other things, charged the jury the only issue or question which remained for their finding and determination was whether defendant did sell intoxicating liquor in said county on or about the 21st day of January, 1912; and further, that if defendant agreed to sell Crockett a quart of intoxicating liquors for two dollars, and took Crockett's money and delivered a quart of intoxicating liquors to Crockett, it would make no difference from whom the defendant got the intoxicating liquors and what he paid for same. Under the facts we are of the opinion the objections to these charges are well taken. It is a question usually for the jury to decide whether the accused sold intoxicating liquor or not; still the facts must show a sale. No witness swears appellant sold, and under the state of facts here shown we are of opinion the court was in error in giving these charges. There was nothing as we understand to justify the court

in charging if defendant agreed to sell Crockett a quart of whisky for two dollars, and took the money and delivered the quart of whisky to Crockett, that it would make no difference from whom the defendant got it or what he paid for it. As we understand the evidence, there was no agreement by defendant to sell the whisky. On the contrary, the state of facts precludes the idea that he agreed to sell Crockett whisky, and shows that he got the whisky from Maxey. Under this state of facts it would make a difference from whom defendant got the intoxicating liquors, and what he paid for it. If he got the whisky as he testified, and as other witnesses testified, from Maxey and paid two dollars for it as an accommodation to Crockett, and as agent of Crockett, then he would not be guilty, and it would make a difference in the result and conclusion to be attained. It is not a violation of the local option law to purchase whisky; at least the Legislature has not yet so declared, nor is it an offense for the purchaser to buy through an agent. The party to be convicted must be the seller.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*